IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY CO., | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 16-cv-09553 |
| v. | )<br>) Judge Andrea R. Wood |
| TECHNOLOGY<br>INSURANCE CO., INC. et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

This lawsuit stems from a construction accident that injured four workers. The injured workers were co-employed by Midwest Steel, Inc. ("Midwest") and Administrative Employer Services ("AES"). AES obtained workers' compensation insurance for its employees from Technology Insurance Company, Inc. ("TIC"), while Midwest obtained its insurance from Starr Liability & Indemnity Co. ("Starr"). After the accident, Starr accepted coverage for the injured workers and paid their benefits. Starr subsequently brought the present lawsuit against AES and TIC to recover the sums it has paid and will pay in the future to the injured workers. Both AES and TIC have filed motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 15, 17.) For the reasons explained below, AES's motion to dismiss is granted and TIC's motion to dismiss is granted in part and denied in part.

## BACKGROUND

For the purposes of AES's and TIC's motions to dismiss, this Court accepts as true all well-pleaded facts and views them in the light most favorable to Starr. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

In 2014, Lend Lease (US) Construction, Inc. ("Lend Lease"), the construction manager of the River Point Tower Project, hired Cives Corporation ("Cives") to be a subcontractor on the project. (Compl. ¶¶ 10, 11, Dkt. No. 1-1.) Cives thereafter hired Midwest to be a sub-subcontractor. (*Id.* ¶ 16.) Midwest had, years before, entered into a subcontract with AES, which stated that AES would provide certain employment services including the provision of workers' compensation coverage for AES employees. (*Id.* ¶ 18.)

In order to provide workers' compensation insurance to all the workers on the River Point Tower Project, Lend Lease entered into a "contractor controlled insurance program" ("CCIP") with Starr, an insurance company. (*Id.* ¶¶ 7, 8, 12.) The Starr policy provided for a $500,000 deductible; that is, Lend Lease had to reimburse Starr for any amounts paid, up to $500,000. (*Id.* Ex. A.) Pursuant to the CCIP, Starr issued a Workers' Compensation and Employers Liability insurance policy to Midwest. (*Id.* ¶ 17.) Meanwhile, AES obtained workers' compensation insurance for its employees from Defendant TIC. (*Id.* ¶ 9.) However, the TIC policy did not specifically identify Midwest as a lessee or indicate that it provided coverage for the workers that would be working on the River Point Tower Project. (*Id.* ¶ 34.)

Later in 2014, four ironworkers were injured while working on the River Point Tower Project. (*Id.* ¶ 35.) The injured workers filed applications for benefits with the Illinois Workers' Compensation Commission, identifying both Midwest and AES as their employers. (*Id.* ¶ 37.) Starr accepted coverage but under a reservation of rights. (*Id.* ¶ 38.)

On January 14, 2015, 17 days after the four ironworkers were injured, Midwest and AES entered into a second subcontract that altered several terms of their original agreement. (*Id.*

¶¶ 41, 42.) In particular, the second Midwest-AES subcontract removed AES's obligation to provide workers' compensation insurance. (*Id.* ¶ 43.)[1]

In the present lawsuit, Starr now alleges that AES and TIC have failed to fulfill their obligations to provide coverage and pay benefits for the injured workers' claims. (*Id.* ¶ 39.) In particular, Starr has filed a three-count complaint, asking the Court for the following relief: (1) contribution from TIC as a co-insurer (Count I); (2) recovery from AES and TIC pursuant to the Illinois Workers' Compensation Act, 820 ILCS 305/1(a)(3) (Count II); and (3) a declaratory judgment declaring AES's and TIC's obligations with respect to the workers' compensation claims, including a declaration that AES and TIC have no rights and can claim no benefits pursuant to a deductible agreement between Lend Lease and Starr (Count III).

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

**I.     Starr's Motion to Strike**

Following the briefing of AES's motion to dismiss, Starr filed a motion asking the Court to strike portions of AES's reply brief or, in the alternative, grant leave for it to file a surreply.

---

[1] The reasons why Midwest and AES chose to enter into a second contract are not apparent from the record and, in any case, prove to be of no moment at this stage in the litigation.

According to Starr, such relief is necessary because AES's reply brief improperly raises new arguments and requests new relief that were not part of its original motion to dismiss. Specifically, Starr contends that AES argues for the first time in its reply brief that the indemnification and waiver of subrogation clauses in the Midwest-AES subcontract bar Starr's claims against AES.

Normally, arguments raised for the first time in a reply brief are waived. *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006). AES's arguments regarding the indemnification and subrogation clauses should have been raised in the initial motion to dismiss brief. Instead of granting the motion to strike, however, the Court grants Starr's request to file a surreply and will consider the surreply in assessing AES's motion to dismiss. Providing Starr with the opportunity to respond to AES's new arguments in a surreply prevents any prejudice Starr might have suffered as a result of the Court's consideration of the new arguments.

## II.     AES's Motion to Dismiss

In the complaint, Starr alleges that it is the subrogee of Midwest and as the subrogee it seeks reimbursement for the past and future payments it has made to the injured workers on AES's behalf. Subrogation simply means that one person is allowed to stand in the shoes of another and assert that person's rights against a defendant. *See Trogub v. Robinson*, 853 N.E.2d 59, 63 (Ill. App. Ct. 2006). In Illinois, subrogation is an equitable principle applied when one person has involuntarily paid a claim of another, thereby allowing that person to succeed to the rights of the other with respect to the claim at issue. *Dix Mut. Ins. Co. v. LaFramboise*, 597 N.E.2d 622, 624 (Ill. 1992). Consequently, a party who asserts a right of subrogation acquires no greater or lesser rights than those possessed by the original party. *See Cont'l Cas. Co. v. Polk Bros.*, 457 N.E.2d 1271, 1273 (Ill. App. Ct. 1983).

Here, Starr is asserting a right to step into the shoes of Midwest in order to bring a claim that Midwest could have brought against AES. The only substantive claim Starr, as subrogee, brings against Midwest is for recovery pursuant to the Illinois Workers' Compensation Act. Specifically, Starr points to Section 1(a)(3) of the Act, which states that if any person engages a contractor or subcontractor to do any work, he is "liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor [is] insured." 820 ILCS 305/1. However, in the event that a person pays compensation pursuant to the mandates of Section 1(a)(3), "he may recover the amount thereof from the contractor or sub-contractor . . . ." *Id.* Starr alleges that, under this Act, it is entitled to recover from AES amounts it paid related to the injured workers.

But according to the Midwest-AES contract, Midwest waived its insurer's subrogation rights. The contract states, in relevant part:

> WAIVER OF SUBROGATION. Each party releases and forever discharges the other party, and any officer, agent, employee or representative of such party, from any liability whatsoever arising from loss, damage or injury, for any reason, for which insurance is carried by the party providing the waiver at the time of such loss, damage or injury, to the extent of any recovery or payment under such policies of insurance. All parties to this Agreement will cause their respective insurance policies to be endorsed to allow for this waiver to the extent necessary to effectuate this paragraph.

(Compl. Ex. G.) Both the first and second versions of the Midwest-AES contract contain this same subrogation clause. (*Id.* Exs. G, J.)

The purpose of a subrogation clause such as the one in the Midwest-AES contract "is to permit parties to a construction contract to exculpate each other from personal liability in the event of property loss or damage to the work occurring during construction, relying instead on the insurance purchased by one of the parties to provide recovery for that loss." *Empress Casino Joliet Corp. v. W.E. O'Neil Constr. Co.*, 68 N.E.3d 856, 871 (Ill. App. Ct. 2016). Such

subrogation clauses "shift the risk of loss to the insurance company to facilitate timely completion of the project and avoid the prospect of time-consuming and expensive litigation, regardless of which party is at fault." *Id.* at 871–72. Subrogation waivers are common in construction contracts. *See* S. Turner, Insurance Coverage of Construction Disputes § 5:6 (2d ed. 2017). Additionally, Illinois courts have generally upheld subrogation waivers. *See, e.g.*, *Bastian v. Wausau Homes, Inc.*, 635 F. Supp. 201, 204 (N.D. Ill. 1986) (upholding waiver of subrogation clause in an adhesion contract and concluding that it was not "unconscionable" for an insured individual "to be asked to look first to insurance for compensation for its loss"); *Allstate Indem. Co. v. ADT LLC*, 110 F. Supp. 3d 856, 862 (N.D. Ill. 2015) (holding that "plaintiff's claims are barred by the subrogation waiver in the Contract"); *Hartford v. Burns Int'l Sec. Servs., Inc.*, 526 N.E.2d 463, 466 (Ill. App. Ct. 1988) (holding that waiver of subrogation provision applied to situation where insurer pays the insured's losses and seeks to recover that amount from the defendant).

Nonetheless, Starr argues that the waiver of subrogation clause in the Midwest-AES contract is unenforceable because a condition of the waiver was not fulfilled. Specifically, Starr points to the phrase indicating that the parties are releasing each other from any liability "arising from a loss . . . for which insurance is carried by the party providing the waiver at the time of such loss." Although Starr's argument is somewhat unclear, it appears to be suggesting that the waiver of subrogation clause does not apply because the loss for which Starr is seeking to recover from AES is based on AES's failure to obtain workers' compensation insurance for Midwest, and that loss is not one for which insurance was carried.

When construing a contract clause, the Court's primary objective is to give effect to the intention of the parties. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). The Court must first

6

look to the language of the contract itself to determine the parties' intent. *Id.* If the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. *Id.* A contract is not ambiguous "if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract." *Fiora Bank & Tr. v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. App. Ct. 1991).

The plain language of the waiver of subrogation clause here indicates that the waiver applies if ***Midwest*** carries insurance covering the loss at the time of the loss. For purposes of this lawsuit, the loss consists of the injuries suffered by Midwest's workers and resulting obligation to make workers' compensation payments to those workers. At the time of the loss, Midwest carried insurance, through Starr, covering that loss. Nonetheless, Starr argues that the loss is not covered because ***AES*** did not buy workers' compensation insurance for Midwest. But the subrogation clause clearly applies to the party who experienced the loss—not the party who is protected by the waiver. As long as Midwest had insurance covering the loss at issue, which it did through Starr, the subrogation clause applies. Additionally, according to the complaint, AES did have workers' compensation insurance that covered its employees. (Compl. ¶ 32.) And under the Midwest-AES contract, AES was only required to furnish "Workers' Compensation Insurance covering all of AES employees assigned to [Midwest]." (Compl. Ex. G.) Therefore, Starr's contention that AES somehow failed to meet the requirements of the contract by not providing workers' compensation insurance and therefore the waiver of subrogation clause does not apply is a confusing reading of the agreement at best. *See Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2001) ("[a] court will not interpret a contract in a manner that would nullify or render provisions meaningless").

As a final note on this topic, the Court observes that the wavier of subrogation clause specifically requires the parties to get an endorsement for their respective insurance policies. Thus, Starr either (1) had knowledge of the subrogation waiver, or (2) was never told about the waiver, in which case Midwest did not fulfill its obligations to AES. If Starr was told about the subrogation waiver, it could have taken actions to protect itself, including fixing its premiums at a higher rate or rescinding its contract with Midwest. *See Travelers Indem. Co. v. Crown Corr, Inc.*, No. 11-cv-0965, 2011 WL 6780885, at *9 (D. Ariz. Dec. 27, 2011) (noting that "insurers are in the best position to protect themselves against waivers of subrogation" by "raising premiums to offset outlays incurred from the loss of their subrogation rights"); *Lumbermens Mut. Cas. Co. v. Grinnell Corp.*, 477 F. Supp. 2d 327, 332 (D. Mass. 2007) (noting that an insurer generally will assess a higher premium if the insured waives its subrogation rights).

In sum, the waiver of subrogation clause precludes Starr from bringing claims against AES as subrogee to Midwest; accordingly Starr's claims against AES are dismissed.

### III. TIC'S Motion to Dismiss

TIC moves to dismiss Starr's equitable contribution, Illinois Workers' Compensation Act, and declaratory judgment claims. With respect to the equitable contribution claim, TIC claims that Starr has not alleged that the two insurance companies covered the same entities, risks, and injuries. On the Illinois Workers' Compensation Act claim, TIC argues that the Act does not authorize a private cause of action against an insurer. And as for the declaratory judgment claim, TIC contends that because both the equitable contribution and Illinois Workers' Compensation Act claims fail, Starr has not alleged an actual controversy worthy of declaratory relief. The Court rejects TIC's arguments regarding the equitable contribution and declaratory judgment claims, but grants its motion to dismiss the Illinois Workers' Compensation Act claim.

### A. Starr's Request for Equitable Contribution

According to the complaint, Starr and TIC are concurrent insurers whose policies both cover the injured workers' claims. Starr seeks contribution from TIC to recover payments that Starr made, and will make, on TIC's behalf.

"The doctrine of equitable contribution permits an insurer that has paid the entire loss to be reimbursed by other insurers that are also liable for the loss." *Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Service*, 67 N.E.3d 556, 569 (Ill. App. Ct. 2016) (quoting *Liberty Mut. Ins. Co. v. Westfield Ins. Co.,* 703 N.E.2d 439, 441 (Ill. App. Ct. 1998)). The doctrine of equitable contribution "arises from a right, which is independent from the rights of the insured, to recover from a co-obligor who shares the same liability as the party seeking contribution." *Argonaut Ins. Co. v. Safway Steel Prods., Inc.,* 822 N.E.2d 79, 87 (Ill. App. Ct. 2004). In other words, the doctrine may arise where the insurance policies at issue "cover a risk on the same basis and there is an identity between the policies as to parties and insurable interests and risks." *Home Indem. Co. v. Gen. Accident Ins. Co. of Am.,* 572 N.E.2d 962, 963 (Ill. App. Ct. 1991). In its motion to dismiss, TIC argues that Starr's contribution claim fails because Starr has not alleged that the parties have a mutual insured—that is, Starr has not shown "an identity between the parties as to the insurable interests and risks."

The Court disagrees, at least for purposes of the motion to dismiss. Starr asserts that TIC issued a Workers' Compensation and Employers Liability insurance policy that covered the injured workers. Starr also issued a Workers' Compensation and Employers Liability insurance policy that covered the injured workers. The mere fact that TIC's policy was issued to AES while Starr's policy was issued to Midwest is irrelevant—both are alleged to cover the same workers, risks, and injuries.

9

To succeed on its motion to dismiss, TIC would have to show that Starr has failed to plausibly allege that the policies covered the same interests, risks, and entities. The allegations of Starr's complaint are sufficient to overcome such a challenge, as it is not obvious that the parties did not, in fact, cover the same interests, risks, and entities. *See, e.g.*, *U.S. Fidelity and Guar. Co. v. Continental Gas Co.*, 556 N.E.2d 671, 675 (Ill. App. Ct. 1990) (granting motion to dismiss based on a finding that one party was a primary insurer and the other an excess insurer, and consequently the policies did not cover the same risks). Indeed, if anything, the opposite is true. On a record developed through discovery, TIC may be able to establish that the covered interests, risks, and entities are not, in fact, the same. TIC may raise its argument again at the summary judgment stage. *See Hartford Cas. Ins. Co. v. Constr. Builders in Motion, Inc.*, No. 11-cv-7498, 2012 WL 5342312, at *4 (N.D. Ill. Oct. 29, 2012) (holding that an in-depth analysis of the parties policies was inappropriate at the motion to dismiss stage). Therefore, TIC's motion to dismiss Count I is denied.

### B. Claims Related to the Deductible

TIC also argues that Starr should be prevented from pursuing claims against TIC related to Lend Lease's $500,000 deductible. According to the Starr-Lend Lease Policy, Lend Lease was obligated to reimburse Starr for any amounts paid related to an accident, up to $500,000. In the complaint, Starr asserts that "TIC's obligation to past and future payments is not affected by any deductibles in any of the policies." (Compl. ¶ 60.) It is unclear from the complaint whether Lend Lease actually has paid the $500,000 deductible. It is also unclear from the complaint whether Starr is actually seeking to recover the $500,000 deductible from TIC; Starr does not actually say so in its complaint or its briefs. But Starr need not detail the amount is seeks at the motion to dismiss stage. The question is not whether Starr has proven its claim for monetary relief or, if so,

10

the amount owed. At the pleading stage, it is enough that Starr has pleaded a plausible claim for contribution. It has done so. If upon a more complete record, TIC decides to seek partial summary judgment as to the recoverability of the $500,000 deductible, it may do so.

### C. Illinois Workers' Compensation Act

TIC also argues that Starr cannot seek relief from it pursuant to Section 1(a)(3) of the Illinois Workers' Compensation Act because that statute does authorize a private cause of action against an insurer. In its response, Starr states that its Section 1(a)(3) claim was "against AES" and, therefore, TIC lacks standing to file a motion to dismiss this count. Despite making this assertion now, Starr did include TIC in its workers compensation claim—the complaint expressly alleges that, "[p]ursuant to Section 1(a)(3) of the [Illinois Workers' Compensation Act], Starr is entitled to recover from AES *or TIC* all sums that it has paid and will pay in the future to the Injured Workers." (Compl. ¶ 66 (emphasis added).) Nonetheless, the Court understands Starr to have withdrawn any claim it may have purported to assert against TIC under the Illinois Workers' Compensation Act. Because Starr has admitted that it is not seeking relief under Section 1(a)(3) against TIC, the Court dismisses that claim.

### D. Declaratory Judgment Claim

In the final count of its complaint, Starr seeks a declaratory judgment to determine the rights and duties of the parties. TIC argues that Starr's request for declaratory judgment is deficient as it does not present an actual controversy against TIC for contribution. A basic requirement for declaratory relief is an actual controversy. *See Royal Glob Ins. Co. v. Aetna Ins. Co.*, 403 N.E.2d 680, 682 (Ill. App. Ct. 1980). An actual controversy requires a legitimate dispute in need of an "immediate and definitive determination of the parties' rights[.]" *Id.* As explained above, Starr has adequately alleged a contribution claim against TIC. Thus, there is a

"legitimate dispute" as to Starr's right to recover from TIC and Starr has alleged an actual controversy to support its claim for declaratory relief.

## CONCLUSION

For the foregoing reasons, Starr's motion to strike portions of AES's reply brief or in the alternative for leave to file a surreply (Dkt. No. 29) is granted in part and denied in part. Specifically, the motion to strike is denied and the motion to file a surreply is granted. In addition, AES's motion to dismiss (Dkt. No. 15) is granted while TIC's motion to dismiss (Dkt. No. 17) is granted in part and denied in part. Count II against TIC and all of Starr's claims against AES are dismissed with prejudice. The case will proceed with respect to Starr's contribution and declaratory judgment claims against TIC.

ENTERED:

Dated: September 30, 2017

_____
Andrea R. Wood
United States District Judge