# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY CO., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TECHNOLOGY INSURANCE CO., INC., ) <br> ) <br> Defendant. ) | No. 16-cv-09553 <br><br> Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiff Starr Indemnity & Liability Co. ("Starr") provided workers' compensation insurance for construction contractor Lend Lease (US) Construction, Inc. ("Lend Lease"). Lend Lease managed a construction project for which it retained subcontractors that were also insured under Lend Lease's policy from Starr. One of the subcontractors, however, also had a contract with another employer, which Starr claims made Defendant Technology Insurance Co., Inc. ("TIC") its coinsurer on Lend Lease's construction project. While working on the project, four ironworkers employed by the subcontractor sustained injuries for which they sought workers' compensation benefits. Starr covered their claims, paying a total of $583,045.18. As Starr's policy with Lend Lease contained a $500,000 deductible, Lend Lease reimbursed Starr for that amount. Starr has brought the present action seeking equitable contribution from TIC for its share of the ironworkers' claims. Now before the Court are cross-motions for summary judgment filed by Starr and TIC, each seeking a ruling on whether Starr may recover the $500,000 deductible from TIC, if Starr proves that TIC was in fact a coinsurer of Lend Lease. (Dkt. Nos. 59, 72.) For reasons explained below, the Court finds in favor of TIC on this narrow issue.

**BACKGROUND**

In evaluating cross-motions for summary judgment, the Court must take "the facts in the light most favorable to the non-movant, first for one side and then for the other." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 648 (7th Cir. 2003). Here, there are several disputed facts, particularly with respect to those facts supporting Starr's motion for partial summary judgment. Yet the present motions concern a purely legal issue that will only arise if Starr proves certain facts establishing that TIC was a coinsurer obligated to pay out for the injuries for which Starr seeks equitable contribution. Both parties agree that TIC's coinsurer status should be resolved at a later stage in the proceedings. Thus, any disputed facts are not material to the present motions. For that reason, where disputed, the Court provides Starr's version of the following facts for context, while not resolving any disputed factual issues at this time.

Lend Lease was the construction manager for a construction project in downtown Chicago. (Def.'s Resp. to Pl.'s Statement of Uncontroverted Facts ("DRSUF") ¶¶ 6, Dkt. No. 67.) To provide insurance for the construction project, Lend Lease created a Contractor Controlled Insurance Program ("CCIP"). (*Id.* ¶ 7.) Pursuant to the CCIP, construction workers on the project were covered by the Workers' Compensation and Employers Liability insurance policy that Lend Lease acquired from Starr. (*Id.* ¶¶ 4, 7.) The CCIP Procedures Manual stated that subcontractors of every tier would be required to enroll in the CCIP, unless specifically excluded. (*Id.* ¶ 8.) Accordingly, Lend Lease's sub-subcontractor on the project, Midwest Steel, Inc. ("Midwest"), was enrolled in the CCIP and insured by Starr. (*Id.* ¶¶ 10–11.)

At all relevant times, Midwest was a party to a Client Service Agreement with Administrative Employer Services, Inc. ("AES"). (*Id.* ¶ 19.) Pursuant to the Client Service

Agreement, all Midwest employees working on the Lend Lease project were deemed also to be AES employees. (*Id.* ¶ 20.) Among the responsibilities AES agreed to assume was to provide workers' compensation insurance for Midwest employees.[1] (*Id.*) AES's Workers' Compensation and Employers Liability insurance policy was issued by TIC. (*Id.* ¶ 18.)

Pursuant to its policy issued to Lend Lease, Starr agreed to pay all damages for bodily injuries sustained by Lend Lease employees. (*Id.* ¶ 5.) However, the policy contained a "Deductible Coverage Endorsement" under which Lend Lease was required to reimburse Starr for amounts paid up to the $500,000 per accident deductible. (*Id.*) Thus, Starr would pay for all covered losses in the first instance, but Lend Lease would subsequently repay Starr for any amounts it paid up to the deductible. (*Id.*) In the event Lend Lease failed to reimburse Starr, Starr was entitled to cancel the policy but would remain fully liable for the amount of claims incurred before cancellation. (*Id.*) By contrast, TIC's policy contained no deductible provision. (*See* Aff. of Baer, Ex. 5 at TIC 001215–18, Dkt. No. 62.) Both Starr and TIC's policies contained an identical "Other Insurance" provision, however, which stated:

> We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

(*Id.* Ex. 1 at STARR 000100–01; *id.* Ex. 5 at TIC 001216.)

---

[1] The Court pauses here to note that the core factual dispute between the parties concerns AES's status as Midwest's co-employer and AES's obligation to provide workers' compensation insurance for Midwest employees. Specifically, TIC argues that Starr relies on an incorrect version of the Client Services Agreement, and the operative agreement governing Midwest's relationship with AES during the times relevant to this action did not obligate AES to provide workers' compensation insurance for Midwest's employees. (DRSUF ¶¶ 19–20.) For present purposes, the Court accepts Starr's version of the disputed facts, because the legal issue presented in the cross-motions arises only if the factual disputes are later resolved in Starr's favor.

On December 29, 2014, four ironworkers suffered injuries while working on Lend Lease's downtown Chicago construction project. (DRSUF ¶ 12.) Those injured ironworkers sought workers' compensation benefits for their injuries. (DRSUF ¶ 13; Pl.'s Resp. to Def.'s Statement of Material Facts ("PRSMF") ¶ 4, Dkt. No. 82.) In their applications for workers' compensation benefits, the ironworkers identified both Midwest and AES as their employers. (DRSUF ¶ 14.) Starr ultimately paid $583,045.18 to cover all expenses associated with the injured ironworkers' claims. (*Id.* ¶ 16.) Shortly thereafter, Lend Lease reimbursed Starr for the full amount of the $500,000 deductible. (PRSMF ¶ 17.)

Prior to commencing the present action, Lend Lease filed another lawsuit in the United States District Court for the Northern District Illinois against TIC and AES. (PRSMF ¶ 5; *Lend Lease (US Constr., Inc. v. Admin. Emp'r Servs., Inc.*, No. 1:15-cv-04318 (N.D. Ill.).) In the complaint, Lend Lease alleged that TIC was a coinsurer for purposes of the ironworkers' injuries pursuant to Midwest's contract with AES. (PRSMF ¶ 6.) Lend Lease sought indemnification from TIC for the full $500,000 that Lend Lease paid to Starr to satisfy the Starr policy's deductible. (*Id.*) TIC moved to dismiss the action, arguing that Lend Lease "failed to plead a legal theory which would entitle it to recover its own deductible from [TIC] under Illinois law." (*Id.* ¶ 7.) The district court ruled in TIC's favor and dismissed Lend Lease's claims with prejudice, finding that Lend Lease could not maintain a claim for equitable contribution from TIC for amounts it paid to satisfy the Starr policy's deductible because Lend Lease was not itself an insurer. (*Id.* ¶¶ 10–11); *Lend Lease (US) Constr., Inc. v. Tech. Ins. Co. (Lend Lease I)*, No. 15 C 4318, 2016 WL 147895, at *3 (N.D. Ill. Jan. 13, 2016).

Following dismissal of its complaint, Lend Lease filed a motion pursuant to Federal Rule of Civil of Procedure 59(e) to alter or amend the judgment, requesting that the dismissal be

without prejudice so that Lend Lease could file a third amended complaint. (Def.'s Resp. to Pl.'s Suppl. Statement of Uncontroverted Facts ¶ 1, Dkt. No. 84.) Lend Lease's proposed third amended complaint sought to add Starr as a plaintiff so that Starr could bring a contribution claim against TIC. (*Id.* ¶ 2.) The district court denied the motion. (*Id.* ¶ 4.) Lend Lease then appealed the dismissal to the Seventh Circuit. (PRSMF ¶ 13.) However, the Seventh Circuit affirmed the district court's ruling, holding that Lend Lease was not entitled to contribution or indemnification from TIC. (*Id.* ¶¶ 14–15); *Lend Lease (US) Constr., Inc. v. Admin. Emp'r Servs., Inc. (Lend Lease II)*, 840 F.3d 386 (7th Cir. 2016). Its decision also addressed Lend Lease's Rule 59(e) motion, again affirming the district court and noting that "Lend Lease has already had three chances to plead correctly—making this a case of three strikes and you're out—and Starr can litigate its own claims against TIC." *Lend Lease II*, 840 F.3d at 388. Starr apparently heeded the Seventh Circuit's admonition and filed the present action for equitable contribution against TIC in the Circuit Court of Cook County, Illinois, which TIC promptly removed to this Court on the basis of diversity jurisdiction.[2] (Notice of Removal, Dkt. No. 1.)

## DISCUSSION

Both parties agree that their motions for partial summary judgment focus on a single legal issue for which there are no disputed issues of material fact: whether Starr may recover from TIC the $500,000 it paid in connection with the injured ironworkers' claims, even though Lend Lease reimbursed that sum pursuant to the deductible provision in its insurance policy with Starr. Whereas Starr contends that the deductible must be included in its contribution claim, TIC argues

---

[2] The original complaint also named AES as a party. However, this Court dismissed AES from the action because the waiver of subrogation clause in the Midwest-AES contract precluded Starr from bringing claims against AES as subrogee to Midwest. (Mem. Op. and Order on Mot. to Dismiss at 4–8, Dkt. No. 41); *Starr Indem. & Liab. Co. v. Tech. Ins. Co.*, No. 16-cv-09553, 2017 WL 4340177, at *2–4 (N.D. Ill. Sept. 30, 2017).

that Starr already has been made whole for the amount of the deductible and may only seek contribution from TIC for its share of payments made in excess of the deductible. Although TIC's status as a coinsurer from whom Starr may seek equitable contribution will be determined later, the parties seek to narrow the issues such that if a jury (or the Court) at a later stage in the proceedings determines that TIC shared with Starr an obligation to cover the ironworkers' claims, the damages issue will already be resolved. The Court agrees that there are no disputed issues of material fact as to this legal issue such that it is ripe for resolution.

## I. Collateral Estoppel

TIC argues in its motion for partial summary judgment that the doctrine of collateral estoppel precludes Starr from pursuing its equitable contribution claim against TIC. Collateral estoppel, or issue preclusion, precludes the relitigation of an issue that has been resolved in a previous lawsuit between the same parties or their privies. *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013). When considering the preclusive effect of a previous federal court judgment, the Court must apply the federal common law of collateral estoppel. *Midwest Operating Eng'rs v. Dredge*, 147 F. Supp. 3d 724, 736 (N.D. Ill. 2015). Collateral estoppel has four elements:

> (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action.

*Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).

TIC contends that the district court in Lend Lease's action against TIC issued a final judgment finding that Lend Lease could not recover the $500,000 deductible from TIC. Now, according to TIC, Starr is seeking to relitigate an issue that has already been decided by a district court and affirmed by the Seventh Circuit. Although it is Starr rather than Lend Lease that seeks

6

to recover the deductible in this action, TIC asserts that Starr should be collaterally estopped because Starr is litigating Lend Lease's interests rather than its own. That is because Starr has been fully repaid for the amounts it expended up to the deductible, and thus it no longer has any rights as to that sum.

The Court can quickly reject the application of collateral estoppel here for two reasons. First, the issue in the present action is not the same as that in the earlier action. Indeed, in affirming the district court's dismissal of the earlier action, the Seventh Circuit clearly stated that the "argument for splitting the workers' compensation benefits between" Starr and TIC "is not this case." *Lend Lease II*, 840 F.3d at 387. Second, both the district court and the Seventh Circuit ruled in the previous action that Lend Lease, as a non-insurer, could not state a claim for equitable contribution because such a claim exists only between coinsurers. *Lend Lease II*, 840 F.3d at 387; *Lend Lease I*, 2016 WL 147895, at *2–3. Lend Lease therefore could not represent Starr's interests in an equitable contribution claim because that claim could be raised only by Starr. *Lend Lease II*, 840 F.3d at 388 ("Starr can litigate its own claims against TIC.") Conversely, Starr cannot represent Lend Lease's interests here because an equitable contribution claim concerns only coinsurers. Consequently, collateral estoppel does not preclude Starr from pursuing recovery of the $500,000 deductible.

 II. **Allocation of the Deductible**

The core legal dispute raised in both motions for partial summary judgment is whether Starr may recover Lend Lease's deductible in the event that TIC is found to be a coinsurer and such that Starr may maintain an equitable contribution claim against it. Starr's motion asks the Court to conclude as a matter of law that Starr may base its equitable contribution claim on the total amounts it paid to cover the injured ironworkers' claims, including amounts reimbursed by

Lend Lease pursuant to its policy's deductible provision. Meanwhile, TIC asserts that Starr would obtain a double recovery if it is permitted to seek contribution for the deductible. Accordingly, TIC asks the Court to exclude the $500,000 deductible from Starr's equitable contribution claim and find that Starr may recover only approximately $41,500, which constitutes TIC's share of the amounts Starr paid above the deductible—*i.e.* 50% of $83,000.[3]

Under Illinois law, "[c]ontribution as it pertains to insurance law is an equitable principle arising among coinsurers which permits one insurer who has paid the entire loss, or greater than its share of the loss, to be reimbursed from other insurers who are also liable for the same loss." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 276 (Ill. 2004). Starr argues that it is entitled to equitable contribution because it paid the full amount of the claims, including the $500,000 deductible, at least a portion of which should have been borne by TIC. Illinois courts have found that the "right to equitable contribution arises when one insurer pays money for the benefit of another insurer." *E.g.*, *Am. Nat'l Fire Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 796 N.E.2d 1133, 1136 (Ill. App. Ct. 2003). And Starr did actually pay the deductible amounts due to the particulars of the deductible agreement, which required Starr to pay the claims in the first instance and then seek reimbursement from Lend Lease. Moreover, by paying those amounts, Starr did benefit TIC. As a result, all else being equal, the Court likely would conclude that TIC was liable for the full amount of the deductible.

While neither party cited the case, the Court finds the Seventh Circuit's decision in *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069 (7th Cir. 2004), to be analogous. That case involved two coinsurers, Continental and Zurich, that had shared a duty to cover their insured's litigation defense costs. Zurich's insurance policy contained a self-insurance retention clause

---

[3] The Court has rounded the total amounts at issue. The exact amount to which TIC claims Starr is potentially entitled is $41,522.59.

whereby the insured would pay the first $2 million of any defense costs; Continental's policy did not contain any such provision. *Id.* at 1075. Initially, Continental paid the insured's defense costs, but it then sought half of those costs from Zurich. However, the Seventh Circuit held that a fifty-fifty method of allocation was inappropriate as "Continental did not negotiate a self-retention provision and is not entitled to benefit from Zurich's provision." *Id.* Thus, the Seventh Circuit held that Zurich could subtract $2 million from the amount it was required to reimburse Continental. *Id.* Like Zurich, here, Starr negotiated the deductible provision shielding it from coverage up to $500,000 per accident whereas TIC's policy did not limit its exposure whatsoever. Applying the *Taco Bell* court's allocation method, TIC would be liable for the $500,000 deductible plus its one-half share of the amounts Starr paid over the deductible, for a total of $541,500.

Several other cases from outside this Circuit have similarly concluded that an insurer without a deductible, or with a smaller deductible than its coinsurer, is liable for the difference. Starr relies heavily on *Pacific Power & Light Co. v. Transportation Indemnity Co.*, 460 F.2d 959 (9th Cir. 1972). There, the insured was protected by two insurance policies, but one policy had a $25,000 deductible provision. When the insured incurred damages approximately equal to $25,000, it bore those costs itself and then sought reimbursement from its insurer without a deductible, arguing that it was obligated to pay the entire sum. When that insurer refused to reimburse the insured, the insured initiated a breach of contract action. The Ninth Circuit held that both insurers had a duty to indemnify the insured, and that the insured's loss would be prorated fifty-fifty between its two insurers, "with the deductible feature resolved between [the insurer with the deductible] and the insured." *Id.* at 962 & n.5. The Ninth Circuit further noted as to the deductible that "[o]nly one of [the two insurers] bargained for the deductible provision," and the

9

court thus declined to allow the insurer without a deductible to "receive[] it as a windfall." *Id.* at 962 n.5. Other courts have disagreed with *Pacific Power* to the extent that the court prorated the loss between the two insurers, instead holding the insurer without a deductible (or a smaller deductible) liable for the entire amount of the other insurer's deductible (or the difference between the two deductibles). *See Cargill, Inc. v. Commercial Union Ins. Co.*, 889 F.2d 174, 180 (8th Cir. 1989); *Ins. Co. of N. Am. v. Cont'l Cas. Co.*, 431 F. Supp. 316, 319 (E.D. Pa. 1977), *rev'd on other grounds*, 575 F.2d 1070 (3d Cir. 1978). Nonetheless, those courts agreed with *Pacific Power* that an insurer without a deductible does not get to enjoy the benefit of a coinsurer's deductible. But instead of prorating the loss, they allocated the full amount of the coverage gap to the insurer without a deductible (or with a smaller deductible).

The present matter does not come before this Court on a blank slate, however. Indeed, Lend Lease has already fully reimbursed Starr for the amounts Starr paid within the deductible. It then unsuccessfully attempted to recover the deductible from TIC in the earlier lawsuit. In the present action, Starr and TIC are the only parties and Starr is asking the Court to order TIC to reimburse it for a sum for which Starr has already been fully reimbursed. By contrast, in *Pacific Power*, the insured instituted a direct action against its insurer. *See Pacific Power*, 460 F.2d at 960. Similarly, in *Taco Bell, Cargill*, and another case relied upon by Starr, *Keene Corp. v. Insurance Co. of North America*, No. 78-1011, 1983 U.S. Dist. LEXIS 16944 (D.D.C. May 13, 1983), the insured was a party to the action. And while *Insurance Co. of North America v. Continental Casualty Co.*, 431 F. Supp. 316, 317 (E.D. Pa. 1977), was between only the coinsurers, neither insurer had paid any sum to the insured and were instead seeking an adjudication of their respective liabilities. Thus, in those cases, the courts were able to make a fair allocation of the disputed sums between the coinsurers and their insured.

That is not possible here due to the procedural history and the cause of action asserted. Because Lend Lease reimbursed Starr for payments up to its deductible, it is Lend Lease that has paid more than its share of the loss. And if TIC is in fact a coinsurer, it should have been liable to Lend Lease for at least a portion of the deductible.[4] Thus, it is Lend Lease that is interested in recovering the deductible. But Lend Lease is not a party here. Starr is the plaintiff and it has already been made whole—recovering the deductible would be a windfall to it. Furthermore, as discussed above, Starr cannot represent Lend Lease's interests here, as Starr's claim is for equitable contribution, which may only be brought by one insurer against another insurer. *See Lend Lease II*, 840 F.3d at 387; *Lend Lease I*, 2016 WL 147895, at *3. Moreover, "[s]uch an action is based in equity and does not depend upon the contractual rights of the insured." *Progressive Ins. Co. v. Universal Cas. Co.*, 807 N.E.2d 577, 585 (Ill. App. Ct. 2004). Thus, the Court does not believe it is appropriate to consider Lend Lease's interests when equitably allocating the disputed sum between its two insurers. That is especially true where Lend Lease has had its chance to litigate the proper allocation of the deductible, and its case was dismissed with prejudice after Lend Lease failed three times to plead a proper claim.

This Court takes no issue with those courts that have held that an insurer is not entitled to enjoy a windfall from a deductible provision agreed to by another insurer and its insured. Yet here, the Court cannot rule in such a way as to eliminate such a windfall. TIC may well enjoy a windfall if it is liable only for its share of the sums paid in excess of the deductible, but the most the Court can do is shift that windfall from TIC to Starr. The Court does not believe that such a resolution is more equitable than the status quo. And Starr has not explained why allowing it to

---

[4] Because the Court finds that Starr is not entitled to recover any part of the deductible from TIC, the Court need not conclusively determine whether TIC would have been required to reimburse the entire $500,000 deductible or only a prorated portion of that amount.

recover sums for which it has already been reimbursed is an equitable result. That is likely because Starr knows that it will not retain any recovery of the deductible for itself. Indeed, Starr concedes that, "as part of the deductible agreement, Starr explicitly agreed to repay Lend Lease in certain situations where Starr obtains a recovery after the deductible has been paid." (Pl.'s Reply in Support of Mot. for Partial Summ. J. at 13 n.9, Dkt. No. 78; *see also* Aff. of Baer, Ex. 1 at STARR000011.) Nonetheless, Starr insists that what it "might do with any recovery simply does not impact TIC's obligations as a co-insurer."(Pl.'s Reply in Support of Mot. for Partial Summ. J. at 13.) But that argument cuts both ways: the Court also cannot consider the possibility that Starr will refund any recovery of the deductible to Lend Lease in determining what is equitable with respect to Starr. As discussed above, the Court may only consider the equities as between the two parties before it in this action. And Starr, having already been reimbursed for what it paid within the deductible, is entitled to no more.

In making its case for contribution, Starr analogizes the reimbursement it received from Lend Lease to a collateral source payment to a tort victim. The collateral source rule provides that "benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." *Arthur v. Catour*, 833 N.E.2d 847, 851 (Ill. 2005). For example, if a tort victim receives an insurance payment for his injury, that payment will not reduce the tortfeasor's liability in a subsequent action. *See Wilson v. Hoffman Grp., Inc.*, 546 N.E.2d 524, 530 (Ill. 1989). Illinois courts recognize that the collateral source rule presents an exception to the general rule against double recovery. *E.g.*, *Chuttke v. Fresen*, 86 N.E.3d 1263, 1267 (Ill. App. Ct. 2017). "The justification for this rule is that the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons." *Wilson*,

546 N.E.2d at 530. Starr contends that the same rationale applies here: TIC should not be able to benefit from the fact that Starr made a deal with Lend Lease whereby Starr received reduced premiums in exchange for Lend Lease's exposure to the first $500,000 of workers' compensation claims per accident.

The Court finds that the rationale underlying the collateral source rule does not apply with the same force in an action for equitable contribution. In particular, the rule focuses on the wrongdoer and payments made by the wrongdoer to compensate for injuries that he or she caused. Where an individual causes harm, he or she should not be absolved of liability for that harm because the injured party happened to be covered by insurance. *See Arthur*, 833 N.E.2d at 852 ("But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor" (quoting Restatement (Second) of Torts § 920A, Comment b).) However, courts generally only apply the rule where "the payment by the collateral source would not have been made 'but for' the injury caused by the tortfeasor." *Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 430 F. Supp. 2d 984, 987 (N.D. Cal. 2006) (applying California law). That is not the case in an equitable contribution action where an insurer is seeking contribution from a coinsurer for a payment made to cover an insured's injury caused by some third party. TIC is not a wrongdoer in the same sense as a tortfeasor whose negligence or intentional acts caused the insured harm. Indeed, TIC had no role whatsoever in causing Lend Lease to reimburse Starr for the amounts paid within the deductible. Rather, that payment was triggered by the ironworkers' injuries and made pursuant to Lend Lease's workers' insurance policy with Starr and the associated deductible agreement. Given the nature of the cause of action and the present facts, the Court cannot justify departing from the general rule against double recovery.

The Court is also not persuaded by Starr's analogizing its deductible agreement to a reinsurance contract. Specifically, Starr claims that reinsurance is not a factor in a contribution action between coinsurers because the direct insurance policy and the reinsurance contract agreement are two separate contracts. In the same way, Starr's deductible agreement is separate from its insurance policy with Lend Lease. Yet Starr provides no authority for its assertion that reinsurance is not a factor in a contribution action. And in any case, there is no basis for concluding that Starr's insurance policy with Lend Lease is a separate contract from the deductible provision. The deductible provision is contained within the same policy and is between the policy's insured and insurer.[5] A reinsurance contract is simply not comparable, as it generally is a separate contract from the direct insurance policy with no identity between the reinsurer and the direct insurer's insured.

In sum, the Court determines that, based on the facts before it, Starr is not entitled to contribution from TIC for any portion of the amounts Lend Lease reimbursed to Starr pursuant to their workers' compensation insurance policy's deductible agreement. Because Starr has been made whole by Lend Lease, it no longer has any interest in the deductible. Consequently, the Court holds that Starr may not include the $500,000 deductible in its claim for equitable contribution from TIC.

---

[5] The policy's deductible provision is set out in a Deductible Coverage Endorsement. (*See* Aff. of Baer, Ex. 1 at STARR 000009–11.) The endorsement lists the policy number as 900 0005000 00, which is the same policy number associated with the underlying policy. (*Compare id.* at STARR 000009 *with* STARR 000088.) The underlying policy also clearly states that the policy may only be changed "by endorsement issued by us ***to be part of this policy***." (*Id.* at STARR 000100 (emphasis added).)

## CONCLUSION

For the foregoing reasons, Starr's motion for partial summary judgment (Dkt. No. 59) is denied and TIC's motion for partial summary judgment (Dkt. No. 72) is granted.

ENTERED:

Dated: March 31, 2019

_____
Andrea R. Wood
United States District Judge